**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KENT SULLENS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 866 |
| | ) | |
| **KARA GRAHAM; BONNIE GRIFFIN;** | ) | |
| **JIM McKAY;** and, **COMMUNITY** | ) | |
| **HIGH SCHOOL DISTRICT #117,** | ) | **Jury Demand** |
| an Illinois Public Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, KENT SULLENS, ("Sullens"), hereby complains against Defendants, KARA GRAHAM ("Graham"); BONNIE GRIFFIN ("Griffin"); JIM McKAY ("McKay"); and, COMMUNITY HIGH SCHOOL DISTRICT #117 ("District 117") (collectively hereinafter referred to as the "Defendants"), as follows:

### NATURE OF THE ACTION

1.      This action is brought pursuant to federal statutory and Illinois common law. Plaintiff seeks compensatory and punitive damages against Defendants, arising out of their actions in unlawfully accessing, reviewing, downloading, publishing and otherwise using items in Plaintiff's personal computer email account (sullenskc@msn.com) ("Sullens' personal email account" or "personal email account") without Plaintiff's knowledge, consent, and/or authorization. Defendants' actions, as detailed below, caused Plaintiff various damages, including monetary losses, loss of employment, emotional distress, and severe and lasting damage to Plaintiff's reputation.

**JURISDICTION and VENUE**

2.     This action is brought pursuant to 18 U.S.C. §§ 2701, 2707 and Illinois common law and jurisdiction is proper in this court pursuant to 28 U.S.C. §§ 1331 and 1367.

3.     Venue is proper within this district pursuant to § 1391, because, *inter alia*, all or part of the transactions out of which this action arose occurred within the Northern District of Illinois, and/or the Defendants are individuals who reside within the district and a public corporation doing business within the Northern District of Illinois.

**FACTS**

**A.  The Parties**

4     Plaintiff, Sullens, is a former administrator for District 117 who ran two (2) schools within the district and who resides in McHenry County, Illinois.

5.     Defendant Graham is a teacher employed by District 117 and who resides in Lake County, Illinois.

6.     Defendant Griffin is an employee of District 117 and formerly Sullens' secretary at District 117 and resides in Lake County, Illinois.

7.     Defendant McKay is the current Superintendent of District 117, was formerly Plaintiff's direct supervisor, and resides in Lake County, Illinois.

8.     District 117 is a public corporation operating pursuant to Article X Section 1 of the Illinois Constitution 105 ILCS 5/10-1 *et seq.* with its principal place of business in Lake Villa, Illinois.

### B. Sullens' Employment with District 117

9.     At all times relevant hereto, District 117 operated four (4) high schools which served approximately 2,800 students in the communities of Antioch, Lake Villa, Lindenhurst and Old Mill Creek.  Two of those high schools were "alternative" schools associated with the Allendale and Gateway Organizations with Gateway providing residential drug and alcohol abuse treatment programs to adolescents.

10.     District 117 first hired Sullens as a teacher in 1985.  After his nineteen (19) continuous years of employment as a teacher, District 117 promoted Sullens to the Director of its Gateway Educational Program ("Gateway") in 2005.  Sullens served as the Director of Gateway from 2005 until approximately March 21, 2013.

### C. McKay's Interest in Sullens' Outside Business Activities and Expertise

11.     Between approximately June, 2011 and March 2012, McKay learned that Sullens was working on a business plan with then District 117 Co-Superintendent Michael Nekritz ("Nekritz") to start a private school for special needs children.

12.     Between approximately June 2011 and June 2012, McKay exchanged emails and telephone calls with Sullens about Sullens' private school plan and other private business opportunities by which McKay could make money.  McKay made many, if not all, those communications during school business hours on school computers and telephones.

13.     In June, 2012, District 117 appointed McKay Superintendent of Schools.

14.     Around that same time, June 2012, McKay learned that Sullens also had significant experience and expertise in real estate investing.

15.     As a result, throughout the month of July 2012, McKay regularly contacted Sullens

to seek his advice regarding a waterfront property investment McKay was considering making. McKay frequently made these communications during school business hours and using school telephones and/or computers.

16.     At some point between July 2012 and December 2012, McKay learned that Sullens and Nekritz had established the private school the three (3) had been discussing without him, named the "Felicity School" ("Felicity").

### D. Gateway High School's Relocation

17.     Prior to August 2012, the Gateway High School was located at the Gateway Foundation in Lake Villa, Illinois.

18.     In approximately July 2012, as a result of a rent dispute with the Gateway Foundation, McKay called a meeting with, among others, Sullens, to look at an alternative location for District 117's Gateway High School.

19.     Following that meeting, at McKay's direction, District 117 moved the Gateway High School from the Gateway Foundation to another school building – the Gavin School.

20.     Due to the Gavin School having less available space for District 117 to utilize, and that after thirty (30) years of operation Gateway High School had accumulated significant amounts of obsolete and/or unuseable school materials and excess, old classroom furniture, Sullens was charged with disposing of those materials as part of the school's relocation.  Sullens disposed of those materials in a manner consistent with his employment responsibilities at District 117 and in accord with instructions received from, among others, McKay.

### E.  Griffin's Employment Issues

21.     Between 2005 and 2013, Griffin served as Sullens' personal secretary at Gateway.

22.     Sullens shared an open office space with Griffin in the Gateway High School's gymnasium while the school was located at the Gateway Foundation.

23.     In approximately early February 2013, Griffin became extremely distraught with Sullens when, among other things, he advised her she was not allowed to smoke on the Gateway campus.  As a result, Griffin wrote an email to, among others, McKay complaining about Sullens' actions.

### F.  Graham Begins at Gateway

24.     District 117 first hired Graham as a business teacher and volleyball coach in 2006. Graham subsequently taught part-time at one of District 117's alternative high schools while working in its business office with, among others, McKay, during the remainder of the work day.

25.     In November 2012, McKay assigned Graham to teach at the Gateway school under Sullens.  At the time, Gateway did not need an additional teacher.

26.     Within two weeks after arriving at the Gateway High School, Graham initiated a meeting with McKay and the interim District 117 Assistant Superintendent Jay Sabbatino regarding her perception of Sullens' alleged employment deficiencies.

27.     Following Sullens' termination, Graham became the head teacher at Gateway, her current position.

### G.  Unauthorized and Unlawful Access of Sullens' Personal Email Account by District 117, McKay, Graham and Griffin

28.     In approximately 2010, Sullens gave Griffin his then password to his personal email account for the sole purpose of performing a specific task for him at that time.  Sullens did not give

Griffin any further authorization to access his personal email account and changed his personal email account password thereafter.

29.    At some point in 2012, unknown to Sullens, Griffin obtained possession of the password for Sullens' personal email account without Sullens' knowledge and/or consent. Sullens never authorized Griffin to possess his personal email account password. In addition, Sullens did not authorize Griffin to disseminate that email password to any other individuals and/or entities or to access his personal email for any reason.

30.    At some point after November 15, 2012, Griffin provided Graham with Sullens' personal email account password to allow Graham to access that account without Sullens' consent, knowledge and/or authorization.

31.    Sullens never authorized Griffin to disseminate his personal email account password to Graham or anyone else.

32.    Sullens never authorized Griffin to use his personal email account password to access his personal email account without his specific authorization as directed by him, and/or to review, copy, download, disseminate and/or publish any email communications contained in his personal email account and/or any information contained in such email communications.

33.    Sullens never authorized Graham to possess his private, personal email account password, use it without his authorization to access his personal email account, access his personal email account, review, copy, download, disseminate and/or otherwise publish email communications contained in his personal email account and/or information contained in such communications.

34.    Sullens never authorized McKay to possess his private email account password, use it without his authorization to access his personal email account, review, copy, download,

disseminate, publish and/or otherwise use in any way any email communications and/or information in such communications contained in his private email account.

35.     Sullens never authorized District 117 to possess his private email account password, use it without his authorization to access his personal email account, review, copy, download, disseminate, publish and/or otherwise use in any way any email communications and/or information in such communications contained in his private email account.

36.     On or about December 5, 2012, without Sullens' knowledge, consent and/or authorization, Graham accessed Sullens' personal email account and reviewed emails within it.

37.     On or about December 5, 2012, without Sullens' knowledge, consent and/or authorization, Graham took "screen shots" of emails contained in Sullens' personal email account and emailed them to her own account.

38.     On or about December 5, 2012, Graham, without Sullens' knowledge, consent and/or authorization, provided emails she had taken from Sullens' private email account to McKay at McKay's request and discussed the information contained within them.  McKay requested Graham to provide him with these emails with full knowledge that she had obtained them from Sullens' personal email account.

39.     After receiving Sullens' private emails and information contained within them from Graham, McKay disseminated the emails and information contained in them to other employees of District 117 including but not limited to Jay Sabbatino.

40.     McKay also then employed the Sullens' emails provided to him by Graham in an official District 117 investigation into alleged misconduct by Sullens.

41.     On information and belief, McKay thereafter also encouraged and/or directed Graham

and Griffin to continue accessing Sullens' private email to obtain any other information they could find which could be useful in District 117's investigation into Sullens that McKay was conducting.

42.     Shortly thereafter, Graham and Griffin began to access Sullens' personal email account without his knowledge, consent and/or authorization in an effort "to gather more evidence" to provide to McKay for District 117's investigation into Sullens.

43.     On or about January 31, 2013, Graham, without Sullens' knowledge, consent and/or authorization used Sullens' private email password to access Sullens' personal email account. At that time, Graham reviewed many, private emails contained within Sullens' personal email account. At that same time, Graham took "screen shots" of certain private emails contained in Sullens' personal email account and emailed them to herself and then printed them.

44.     At or near that same time, January 31, 2013, Graham showed the private emails she had taken from Sullens' personal email account to various employees of District 117, including but not limited to McKay.

45.     On or about February 1, 2013, Graham met with McKay at the Gateway High School location. During that meeting, McKay, without Sullens' knowledge, consent and/or authorization, directed Graham to print copies of the emails she had taken from Sullens' personal email account and provide them to him. Graham did as McKay directed and gave him Sullens' private emails she had obtained from Sullens' personal email account without his authorization.

46.     At that same time, in late 2012 or early 2013, Griffin used Sullens' private password for his personal email account and, without Sullens' knowledge, consent and/or authorization, accessed his personal email account.

47.     At that time, in late 2012 and early 2013, Griffin, without Sullens' knowledge, consent and/or authorization, reviewed private emails in his personal email account.

### H. Sullens Loses His Employment

48.     Following receipt of Sullens' personal emails from Graham and Griffin, McKay advised District 117 School Board members and/or administrators that Sullens had engaged in significant misconduct and should be terminated.

49.     Among the statements McKay made to District 117 School Board members and/or administrators, was that Sullens had taken District 117 property during the relocation of the Gateway High School to the Gavin School.

50.     As a direct result of McKay's statements about Sullens' alleged theft of school property as allegedly corroborated by emails taken from Sullens' personal email account by McKay, Graham, Griffin and District 117, the District 117 Board terminated Sullens' employment.

51.     Following Sullens' termination, District 117 used emails that it, McKay, Graham and/or Griffin had taken from Sullens' personal email account without his knowledge, consent and/or authorization to support the validity of its termination of Sullens during a mandatory arbitration hearing that took place between September 2013 and December 2013.

<u>**COUNT I**</u>
<u>**(AGAINST DEFENDANT GRAHAM ONLY – VIOLATION OF § 18 U.S.C. § 2701)**</u>

52.     Sullens incorporates paragraphs 1-51 of this Complaint as paragraph 52 of this Count I as though alleged in full herein.

53.     At all times relevant hereto, Sullens never authorized Graham to access his personal email account.

54.     Graham intentionally and wilfully accessed Sullens' personal email account on multiple occasions known and unknown to Sullens without his authorization including but not limited to on or about December 5, 2012, for the purpose of viewing the personal emails contained in that account.

55.     Graham intentionally and wilfully accessed Sullens' personal email account on multiple occasions known and unknown to Sullens without his authorization including but not limited to January 31, 2013, for the purpose of viewing the emails contained in that account.

56.     Defendant Graham's actions described herein resulted in damages to Sullens including but not limited to the loss of his employment with District 117 and related costs and expenses incurred in his attempts to regain his employment with District 117, emotional distress, humiliation, embarrassment and emotional pain and suffering.

57.     Defendant Graham's conduct specifically described in this Count I constituted a violation of the Stored Communications Act, 18 U.S.C. Section 2701(a).

WHEREFORE, Plaintiff respectfully requests this Court to enter an order:

a.      awarding compensatory damages resulting from the loss of his employment with District 117 as a result of Defendant's conduct described herein.

b.      awarding damages to make Plaintiff whole including those costs associated with Plaintiff's efforts to regain his employment with District 117.

c.      awarding compensatory damages for the emotional distress and suffering caused by Defendant's actions.

d.      awarding punitive damages as specifically permitted by law under § 18 U.S.C. § 2701(c).

e.      awarding reasonable costs and attorney's fees as specifically permitted under § 18 U.S.C. 2701(c).

## COUNT II
## (AGAINST DEFENDANT GRIFFIN ONLY - VIOLATION OF 18 U.S.C. § 2701)

58.     Sullens incorporates paragraphs 1-57 of this Complaint as paragraph 58 of this Count II as though fully alleged herein.

59.     Except on one occasion in approximately 2010, as further described herein, at all times relevant hereto, Sullens never authorized Griffin to access his personal email account.

60.     At all times relevant hereto, Sullens never authorized Griffin to access his personal email account to review any emails in his personal email account.

61.     Between November 2012 and March 2013, Griffin intentionally and wilfully accessed Sullens' personal email account without his authorization to review private emails within that account.

62.     Between November 2012 and February 2013, Griffin intentionally and wilfully accessed Sullens' personal email account in excess of any authorization he had given her to access that account to review private emails within that account.

63.     Defendant Griffin's actions described herein resulted in damages to Sullens including but not limited to the loss of his employment with District 117 and related costs and expenses incurred in his attempt to regain his employment with District 117, emotional distress, humiliation, embarrassment and emotional pain and suffering.

64.     Defendant Griffin's actions as specifically described in this Count II constituted a Violation of the Stored Communications Act, 18 U.S.C. § 2701(a), (b).

WHEREFORE, Plaintiff respectfully requests this Court to enter an order:

a.  awarding compensatory damages resulting from the loss of his employment with District 117 as a result of Defendant's conduct described herein.

b.  awarding damages to make Plaintiff whole including those costs associated with Plaintiff's efforts to regain his employment with District 117.

c.  awarding compensatory damage for the emotional distress and suffering caused by Defendant's actions.

d.  awarding punitive damages as specifically permitted by law under § 18 U.S.C. § 2701(c).

e.  awarding reasonable costs and attorney's fees as specifically permitted under § 18 U.S.C. 2701(c).

## COUNT III
## (AGAINST DEFENDANT DISTRICT 117 - VIOLATION OF 18 U.S.C. § 2701 )

65.  Plaintiff re-alleges ¶¶1-64 of this Complaint as though fully alleged herein.

66.  District 117 through its employees Graham and Griffin, intentionally and wilfully accessed Sullens' personal email account on multiple occasions, known and unknown to Sullens, including but not limited to on or about December 5, 2012 and January 31, 2013, without Sullens' knowledge, consent and/or authorization for the purpose of reviewing Sullens' personal emails contained in that account.

67.  District 117, through its employee, Griffin, intentionally and wilfully accessed Sullens' personal email account on multiple occasions, known and unknown between November 2012 and March 2013, without his knowledge, consent and/or in excess of his authorization for purposes of reviewing and/or deleting his private email in his personal email account.

68.     District 117 specifically authorized, directed, consented and/or ratified Graham's and Griffin's intentional and wilful unauthorized access into Sullens' personal email account for purposes of reviewing his private emails contained in that account for the purpose of furthering its business operations, goals and/or objectives.

69.     District 117 specifically authorized, directed, consented and/or ratified Griffin's intentional and wilful access into Sullens' personal email account in excess of any authorization he had ever given to her to access that account for the purpose of furthering its business operations, goals and/or objectives.

70.     District 117's actions, as alleged herein were in violation of 18 U.S.C. §2701(a), (b).

WHEREFORE, Plaintiff respectfully requests this Court to enter an order:

a.      awarding compensatory damages resulting from the loss of his employment with District 117 as a result of Defendant's conduct described herein.

b.      awarding damages to make Plaintiff whole including those costs associated with Plaintiff's efforts to regain his employment with District 117.

c.      awarding compensatory damages for the emotional distress and suffering caused by Defendant's actions.

d.      awarding punitive damages as specifically permitted by law under § 18 U.S.C. § 2701(c).

e.      awarding reasonable costs and attorney's fees as specifically permitted under § 18 U.S.C. 2701(c).

## COUNT IV
## (CIVIL CONSPIRACY AGAINST ALL DEFENDANTS)

71.     Plaintiff incorporates paragraphs 1-70 of this Complaint as though fully alleged herein.

72.     At all times relevant hereto, McKay, Graham and Griffin were acting both individually and as employees of District 117.

73.     At all times relevant hereto, McKay, Graham and Griffin were acting with the express authority of District 117 and its Superintendent of Schools, McKay.

74.     At some time between September 2012 and February 2013, Defendants District 117, McKay, Graham and Griffin entered into an agreement to wilfully and intentionally access Sullens' personal email account without and/or in excess of any authorization provided by him to any of them.

75.     During that same time period, all Defendants entered into an agreement for Graham and Griffin to wilfully and intentionally access Sullens' personal email without and/or in excess of his authorization with the specific purpose of wrongfully reviewing and obtaining his personal emails in an effort "to gather evidence" against Sullens to further District 117's investigation into him.

76.     Pursuant to their agreement, as more fully alleged herein, the Defendants directly and through their co-conspirators, wilfully and intentionally accessed Sullens' personal email account, reviewed emails contained within his personal email account, transferred emails and the information contained within them to their possession, printed and then disseminated those emails and information contained within them to other individuals and entities, including but not limited to District 117's School Board members and administrators.

77.     Defendants' actions as described herein were done without Sullens' knowledge and authorization and/or in certain instances relating solely to Griffin, without his knowledge and in

-14-

excess of any authorization given to her to access his personal email account.

78.     Defendants knew and/or should have known that they did not have authorization to access Sullens' personal email account in the manner in which they did, or to review, transfer, disseminate, publish and otherwise use the personal emails contained within Sullens' personal email account.

79.     The object and/or goal of Defendants' actions as described herein constituted a violation of the Stored Communications Act, 18 U.S.C. §2701.

80.     Defendants' actions as described herein caused Sullens significant damages including but not limited to loss of his employment with District 117, costs and expenses incurred in attempts to regain his employment with District 117, emotional distress, humiliation, embarrassment and emotional pain and suffering.

WHEREFORE, Plaintiff respectfully requests this Court to enter an order:

a.      awarding compensatory damages resulting from the loss of his employment with District 117 as a result of Defendant's conduct described herein.

b.      awarding damages to make Plaintiff whole including those costs associated with Plaintiff's efforts to regain his employment with District 117.

c.      awarding compensatory damages for the emotional distress and suffering caused by Defendant's actions.

d.      awarding punitive damages as specifically permitted by law under § 18 U.S.C. § 2701(c).

e.      awarding reasonable costs and attorney's fees as specifically permitted under § 18 U.S.C. 2701(c).

## COUNT V
## INVASION OF PRIVACY (AGAINST ALL DEFENDANTS)

81.     Plaintiff re-alleges ¶¶1-80 of this Complaint as though fully alleged herein.

82.     Defendants McKay, Graham and Griffin each individually and in their capacity as employees of District 117 wilfully and intentionally viewed the contents of Sullens' private email in his personal email account without his knowledge, consent and/or authorization.

83.     District 117 directed, authorized, consented to and/or ratified Defendants McKay's, Graham's and Griffin's wilful and intentional viewing of Sullens' private email in his personal email account without his knowledge, consent and/or authorization.

84.     Sullens' private email in his personal email account contained personal and private communications to and from, among others, his wife, children, friends and business associates.

85.     Defendants' viewing of Sullens' private email in his personal email account intruded upon private matters, including but not limited to the content of the communications in Sullens' private email in his personal email account.

86.     Defendants' viewing of Sullens' private email in his personal email account was highly offensive to Sullens and caused him pain, anguish, humiliation, embarrassment and pain and suffering.

WHEREFORE, Plaintiff respectfully requests this Court to enter an order:

a.      awarding Plaintiff compensatory damages no less than $500,000 for personal anguish, embarrassment, humiliation and pain and suffering as a result of Defendants' conduct described herein.

b.      awarding Plaintiff punitive damages.

c.      awarding Plaintiff reasonable costs and attorneys fees as permitted by law.

### COUNT VI
### CIVIL CONSPIRACY (AGAINST ALL DEFENDANTS)

87.     Plaintiff re-alleges ¶¶1-86 of this Complaint as though fully alleged herein.

88.     During the relevant time, as more particularly alleged herein, Defendants entered into an agreement to invade his privacy by wilfully and intentionally reviewing Sullens' private email in his personal email account without his knowledge, consent and authorization.

WHEREFORE, Plaintiff respectfully requests this Court to enter an order:

a.     awarding Plaintiff compensatory damages no less than $500,000 for personal anguish, embarrassment, humiliation and pain and suffering as a result of Defendants' conduct described herein.

b.     awarding Plaintiff punitive damages.

c.     awarding Plaintiff reasonable costs and attorneys fees as permitted by law.

Dated:        February 7, 2014           Respectfully submitted,
                                          KULWIN, MASCIOPINTO & KULWIN, LLP

                                          _____
                                          One of Plaintiff's Attorneys

Shelly B. Kulwin
Jeffrey B. Kulwin
Rachel A. Katz
161 North Clark Street, Suite 2500
Chicago, IL 60601
(312) 641-0300